## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO.: 21CR10217-PBS |
| | ) | |
| OSAKPAMWAN HENRY OMORUYI, | ) | |
| **Defendant.** | ) | |

_____)

## DEFENDANT HENRY OMORUYI'S PRELIMINARY SENTENCING MEMORANDUM AND INCORPORATED MOTION FOR A VARIANCE FROM THE SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. § 3553[1]

NOW COMES the defendant, Osakpamwan Henry Omoruyi, ("Henry"),

through counsel, and hereby moves this Honorable Court for a variance pursuant

to 18 U.S.C. § 3553 from the otherwise applicable guideline range both as

recommended by the Probation Department in the Presentence Report, ("PSR"),

and/or from the defendant's final Guideline Sentence as determined by the Court.

The defendant also submits the instant Memorandum in support of the issues

_____

[1] On 10/24/23, this Court informally requested that counsel file their sentencing memorandums by noon on 10/26/23, approximately 30 minutes after counsel received the final PSR. At the time, counsel was out of the U.S. and did not return until late on 10/25/23. Counsel intends to file a more comprehensive sentencing memorandum by late Friday and hopes that this preliminary memorandum will adequately apprise the Court of the issues counsel has identified in the PSR.

raised in his suggested revisions to the PSR which were not adopted by the

Probation Department as of the date of the filing of this Memorandum.  In support

thereof, counsel states the following:

## INTRODUCTION

Henry was convicted of opening bank accounts using a phony ID to receive

and expatriate funds.  He was not convicted of defrauding anyone out of any

money or property.  As a result, his sentencing stands at the cross-roads of four

broken systems:

1. The Federal Sentencing Guidelines –the Guidelines instruct the

   sentencing court NOT to consider a defendant's first offense,

   youthfulness and, as the First Circuit has recognized, are a "crude"

   method for establishing loss.[2]

2. Immigration and customs enforcement- the current immigration system

   does not permit individuals who are not naturalized to remain in the U.S.

   upon conviction of a serious felony.  (PSR p. 24, paragraph 79).  This

---

[2] This Court is encouraged to consider *U.S. v. Njei,*21-10196-FDS, which was an internet spoofing case with a loss amount of approximately $400,000 (most of which was recovered) and an African immigrant first time offender who set up bank accounts to receive ill-gotten gains from unknown fraudsters to then be wired to Africa.  Judge Saylor sentenced Njei to 27 months which was well below the guideline range. Counsel will provide the Court with the PSR and Judgment.  Mr. Saltzman was the AUSA in *Njei* and is in an excellent position to differentiate the two cases from the government's perspective.

failure does not allow for victims to be made whole or for a criminal defendant to remain in his country of choice with his family.  On the contrary, this broken system allows for additional punishment of Henry, which is not considered by the same failed Guidelines at all.

3. The U.S. Banking system prioritizes the speed of transactions over everything else.  As a result, there is no time for individual transaction to be validated or for screened for fraud.  Similarly, very little training has been given to bank employees to screen for fraudulent identification. Simple measures like consulting with a bank employee before transmitting a large sum of money and/or facial recognition technology would have prevented all of the illegal conduct alleged by the government in this case.

4. The internet for its benefits remains the wild west of today's technology.  The fact that individuals can remain anonymous by hiding behind alias accounts on legitimate billion dollar platforms without policing AND defraud little old lady's out of money in romance scandals remains unregulated by the industry itself, (which lobbies against

regulations), and Congress which inexplicably confuses fraud with free speech.

Fortunately, Congress has given the Court 18 U.S.C. § 3553 as a means of balancing all of the complex issues surrounding a defendant's sentence and, in particular, Henry's.

**ARGUMENT**

**A. THE LOSS CALCULATION IS NOT ACCURATE BECAUSE IT DOES NOT REFLECT THE REALITY OF THE CRIME OR FRAUD CRIMES IN GENERAL.[3]**

The First Circuit has described the Guidelines method for calculating loss as a crude standard. *United States v. Cacho-Bonilla*, 404 F.3d 84, 92 (1st Cir. 2005); *United States v. Parsons*, 141 F.3d 386, 392 (1st Cir. 1998). The crudeness of the calculation is on full display in the instant case where Henry, who was an immigrant, was a victim who profited from the criminal activity in this case, but was clearly less responsible than others who hope to evade detection by offering Henry to serve their time. The government has freely admitted that Henry did not

---

[3] Assuming *arguendo,* that this Honorable Court accepts the PSR's loss calculation, the Court is respectfully urged NOT to sentence Henry at the Sentencing Guidelines range but to find sufficient variances pursuant to the factors set forth in 18 U.S.C. § 3553 in order to sentence him well below the Guideline range.

steal the money from any of the victims.  That work was done by other conmen who preyed on lonely victims who were tempted by romantic overtures to part with their money.  Moreover, Henry's PSR loss calculation would be the same if he were a banking attorney with years of experience as opposed to immigrants with limited U.S. experience.

For example, the evidence at trial showed that "Clifford Bernard", a fake individual, transferred money from his bank accounts to Henry.  Any transfers to Henry's accounts shows a complete lack of sophistication and knowledge of the purpose of opening fake accounts.

Additionally, Henry should not be assessed with the full $1,500,000 plus that is recommended by the PSR at paragraph 52, but for only the amount proven at trial to have flowed through the Clifford Bernard account or $313,957.15.  (PSR para. 13).  Nothing else was proven by the government at trial and as such would constitute a due process violation where no witness testifies or was cross-examined.  Also, none of the enhancements in paragraph 52 are appropriate as the scheme that was introduced at trial was far less substantial than the PSR.  Henry

was convicted of lying to a bank when opening a bank account, not defrauding multiple victims.

As a result, there should not be 2-level increases for the number of victims, sophisticated means, misrepresentations of protected institutions or counterfeit access devices.  Henry had no knowledge or participation in what occurred on the front end of the transaction to steal the money.  He should not be held responsible for any sophistication involved in the actual theft.  More importantly, there was no sophistication in his role of setting up the bank account in his name and moving funds through it as if they were his own.  This is the opposite of sophistication.

## B. MULTIPLE FACTORS, SHARED & DISPROPORTIONATE CULPABILITY CANNOT BE IGNORED JUST BECAUSE THEY ARE COMPLICATED.

When a loss is the product of multiple factors, district courts may depart from the guidelines.  *United States v. Gregorio*, 956 F.2d 341, 345-46 (1st Cir. 1992); *United States v. Carpenter*, 781 F.3d 599, 622-23 (1st Cir. 2015). Additionally, "role-in-the offense determinations are innately fact-specific. The court of appeals must, therefore, pay careful heed to the sentencing judge's views." *United States v. Rostoff*, 53 F.3d 398, 413 (1st Cir. 1995); *United States v. Belanger*, 890 F.3d 13, 36 (1st Cir. 2018).

6

## C. HENRY WAS A STRAW AND IS ENTITLED TO A FOUR LEVEL DOWNWARD ADJUSTMENT AS A RESULT OF HIS MITIGATING ROLE UNDER USSG § 3B1.2.[4]

In the context of a mortgage fraud case, the First Circuit has found straw buyers to be less culpable than other participants. *United States v. Cassiere,* 4 F.3d 1006, 1026 (1st Cir. 1993)(Although DeNunzio, Monteiro, [mortgage brokers] and Cassiere [closing attorney] were more culpable than Dolber [appraiser], the straw buyers who were Dolber's co-defendants were relatively minor cogs in the scheme to defraud the lenders. Thus, Dolber was not "less culpable than most other participants." *U.S.S.G. § 3B1.2,* comment. (n. 3)); *United States v. Ruiz*, 999 F.3d 742 (1st Cir. 2021)(uphold a 3 level mitigating role reduction for defendant who's car and presence were used to facilitate a narcotics transaction). Here, Henry is less culpable than anyone.

As set forth above, Henry's life experience and conduct are a strong basis for a classic minor role adjustment. He was not involved at all in the front end of the conspiracy which is where the actual theft occurred. He did not participate in

---

[4] In *United States v. Clough, Docket No.: 21-10171-FDS,* this Court accepted the Parties joint recommendation for a 2-level decrease for minor role over the PSR where the defendant had essentially performed the same task as Henry in which she used a fake ID to set up a bank account from which she cashed checks & withdrew funds from third parties who were defrauded by others that were not known to her.

identifying, cultivating or targeting the actual victims.   He  solely provided a

means for others to withdraw their ill-gotten gain.  Many other individuals were

involved in this scheme as identified by the PSR.  Henry clearly had a below

average role from the others in simply depositing and withdrawing the ill-gotten

proceeds.

Henry is also further removed from the average alleged participants in the

"back end" of fraud conspiracy cases in this District.

The Guidelines describe a minor participant as someone who is less culpable

than most other participants, but who's role is not minimal.  (Application Note 5,

USSG § 3B1.2).  That is unmistakably the case here.  With respect to the factors

set forth in Application Note 3C, Henry was not aware of, cognizant of or able to

participate in any of those factors.   He  was simply a means to the true

perpetrator's end game.

D. **HENRY'S OFFENSE OF CONVICTION IS LESS SERIOUS THAN
   CONTEMPLATED BY THE SENTENCING GUIDELINES**

The guidelines for this financial crime are thoughtless, draconian and

irresponsible to victims.  There is simply no logical way to exchange currencies of

prison time for dollars stolen.  While pretending to serve the purpose of deterrence,

the harsh sentences for financial crimes do not serve victims or the community from which the defendant has allegedly stolen.  Restitution is delayed.  Job placement is delayed.  Family assistance is delayed.  In this case, the Guidelines suggest that Henry be assessed with approximately $314,000 in loss.   He will have limited employment options after this conviction and deportation.

As a result, he will have 60 years to repay his restitution on a minimal income.  The sooner he starts earning income, the more money the victims will recover.  It is that simple.  Incarceration does nothing for the victims of financial crimes. *Gall v. United States,* 552 U.S. 38, 59 (2007)(that in some cases, a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing).

Accordingly, this Court may consider this apparent discrepancy in deciding whether to depart or construct a variance pursuant to § 3553 from the Guideline sentence.

Moreover, the sentencing guidelines are advisory, not mandatory.  *United States v. Booker*, 543 U.S. 220 (2005).  Federal Courts are now free to tailor

individual sentences in light of the factors set forth in 18 U.S.C. § 3553 (a), which

includes the following:

> (1) the nature and circumstances of the offense and the history
> and characteristics of the Defendant; (2) the need for the
> sentence imposed-(A) to reflect the seriousness of the offense,
> to promote respect for the law, and to provide just punishment
> for the offense; (B) to afford adequate deterrence to criminal
> conduct; (C) to protect the public from further crimes of the
> Defendant; and (D) to provide the Defendant with needed
> educational or vocational training, medical care, or other
> correctional treatment ...; (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established
> for ... the applicable category of offense committed by the
> applicable category of Defendant as set forth in the guidelines
> ...; (5) any pertinent policy statement ...; (6) the need to avoid
> unwarranted sentence disparities among Defendants with
> similar records ...; and (7) the need to provide restitution to
> any victims of the offense.

18 U. S. C. § 3553 (a)(2)(A)(B)(C)(D).   The Supreme Court's decisions in *United
States v. Booker,* 543 U.S. 220 (2005), *Kimbrough v. United States,* 552 U.S. 85
(2007), and *Gall v. United States,* 552 U.S. 38 (2007), expand the basis for non-
guidelines sentences to include all offender and offense characteristics and to
include policy problems in the applicable guidelines, and requires judges to impose
a sentence that is sufficient but not greater than necessary to satisfy the purposes of
sentencing.

In *Gall,* the court set forth a three step procedure:  First, begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  Second, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.   Third, the court should explain its findings.  *Gall*, 552  U.S. at 50.

In the instant case, the Court is urged to impose a sentence that is reflective of all the § 3553 criteria, but emphasizes the defendant's lack of any criminal history, family characteristics, good deeds and the need for him to get back to work to pay for his restitution.

**E.      THE DEFENDANT'S LACK OF CRIMINAL RECORD, FAMILY CIRCUMSTANCES WARRANT A VARIANCE PURSUANT TO 18 U.S.C. § 3553.**

In *United States v. Thurston,* 544 F.3d 22, 25-26 (1st Cir. 2008), the First Circuit left intact a 24 month sentence imposed by the district court in a case where the defendant had pleaded guilty to a $5,000,000 Medicare fraud.  This "dramatic" variance from the five year guideline sentence was supported by the

11

district court's assessment of the Section 3553(a) factors and in particular the defendant's good works with others. *Id.*

Likewise, in *United States v. Roselli,* 366 F.3d 58, 69-70 (1st Cir. 2004), the First Circuit denied a Government appeal where the district court had granted a departure for extraordinary family circumstance in a case involving 2 children with serious medical conditions.

More recently, the First Circuit has affirmed that a departure or variance for exceptional family circumstances exist where the defendant's caretaking is "irreplaceable" to the family.  *United States v. Herman,* 848 F3d 555 (2017).

More recently, this district has had a cascade of fraud related sentences in the past three years as a result of the so called "varsity blues" cases.  These cases stem from the illegal payments and receipt of "bribes", paid by parents to college coaches, test administrators and admissions personnel for fraudulent test results and admissions to colleges and universities.  It is respectfully submitted that these cases provide excellent comparisons for the fraud committed in the instant case despite the fact one district judge have found *no loss* to any victim.  Here, there is clearly a loss to a victim, but the Henry shares a similar intent and lack of criminal

record with all of the varsity blues defendants.  As a result, the Court is respectfully urged to consider the following.

Forty-seven of the fifty-seven individual defendants have pleaded guilty or have agreed to do so.[5]  Thirty-two of the defendants who have been sentenced were recently summarized by Insider.com on May 25, 2021, which has been updated.[6]

It should be noted that only one of the varsity blues defendants had a gain calculation in the same offense level as Henry's loss calculation.  (*Vandmoer received $610,000 in bribes).*  Vandmoer received a prison sentence of 1 day. Obviously, there were factors present in his sentence that are unique to him.  The remaining defendants all had no loss calculations, but their bribes would have put them in the sentencing range just below Henry had their bribes counted as losses.

Fifteen of these individuals were sentenced at the range just below Henry's range.  ($250K-$550K).  The average sentence for these individuals was 4.5

---

[5] https://www.nytimes.com/2021/10/09/us/varsity-blues-scandal-verdict.html

[6] https://www.insider.com/college-admissions-scandal-full-list-people-sentenced-2019-9?amp

months with the highest being nine months for a person (Hodge) that the DOJ

deemed to be the worst offender of all the varsity blues offenders.  The lowest

sentence was a single day in prison.

The average sentence for the entire group that has been sentenced is 2.875

months.  If the four individuals who received no time or a single day are removed,

the average sentence for the group is 3.25 months.

Interestingly, spouses who were sentenced received varied sentenced in 3

out of 4 cases presumably based upon culpability.  In the case of 2 spouses, the

wife received a substantially less sentence than the husband.[7]

As a result of all of the above factors, a sentencing variance is warranted.

## F.  THE FRONT END FRAUDSTERS MAY NEVER CONTRIBUTE TO THE RESITUTION RESULTING IN AN UNFAIR BURDEN AND SENTENCE ON HENRY

Henry is further harmed by his association is a foreign national who

will be deported at the conclusion of his sentence and not held to account for

his portion of the restitution.  This imposes an unfair and unwarranted burden

---

[7] Todd Blake received a 4 month sentence compared to Diane Blake's 6 week sentence for paying the same $250,000 in bribes.  Similarly, Lori Loughlin received a 2 month sentence while his husband Mossimo Giannulli received a 5 month sentence for paying the same $500,000 in bribes.

on Henry who may be forced to pay far more than his fair share of the restitution.  The Court can and should consider this anomaly in imposing a sentence on Henry and in assessing any restitution.

## G. ABERRANT BEHAVIOR

Henry's criminal conviction truly constitutes aberrant behavior entitling his to a departure from the applicable sentencing guidelines.  *United States v. Pozzy*, 902 F.2d  133, 137-138 (1st  Cir. 1990); citing *United States v. Russell*, 870 F.2d 18 (1st Cir. 1989).   Henry  has no prior record and has worked extremely hard in college for a lengthy period of his life.

## H. COMBINATION OF FACTORS

A combination of the above factors may constitute a separate basis for departure.  *Koon v. United States*, 518 U.S. 81, 113-14 (1996); *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990).

## I.  SENTENCING RECOMMENDATION

For the reasons set forth herein, there are many mathematical rabbit holes which do not result in a loss calculation that inspires any degree of confidence.  A gain analysis does more justice to Henry's role in the offense.  In the end the Court

must look to sentences that were imposed in other cases.  A period of home incarceration as part of probation is appropriate to allow Henry to spend time with his family prior to a likely permanent deportation and serve the duel purpose of allowing him to start paying restitution to his victims.  Incarceration serves no purpose in this case.

## <u>CONCLUSION</u>

Based upon the foregoing arguments and authorities this Honorable Court is respectfully urged to impose a sentence consistent with the arguments set forth herein.   The Defendant reserves the right to supplement this preliminary memorandum.

Respectfully submitted,

_____
Peter Charles Horstmann, Esquire
 BBO #556377
 450 Lexington Street, Suite 101
 Newton, Massachusetts 02466
 (617) 519-9011

16

## CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 26th day of October, 2023, a copy of the foregoing SENTENCING MEMORANDUM was served electronically, upon AUSAs Chris Markham and Ben Saltzman, 1 Courthouse Way, Boston, MA 02110.

_____
Peter Charles Horstmann, Esquire