# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

_____
                                                    )

**UNITED STATES OF AMERICA,**     )

                                                    )

**v.**                                                   )     NO.: 21CR10217-PBS

                                                     )

**OSAKPAMWAN HENRY OMORUYI,**   )
          **Defendant.**                 )
_____)

## DEFENDANT HENRY OMORUYI'S SUPPLEMENTAL SENTENCING MEMORANDUM AND REPLY TO GOVERNMNET'S SENTENCING MEMORANDA

     The defendant, Henry Omoruyi, ("Henry"), hereby submits the following additional arguments in opposition to the Sentencing Guideline calculation set forth in the PSR and in response to the government's sentencing memoranda (ECF#205) and (ECF#211).

     At the time of the filing of this memorandum it is less than 24 hours before Henry's sentencing and neither the PSR nor the government has provided an explanation or proof as to (1) how unproven conduct that is inconsistent with the concealment money laundering convictions constitutes relevant conduct, (2) how unproven conduct occurring PRIOR to the term of the convicted offenses constitutes relevant conduct, or (3) what makes Henry's case different from other

1

cases in this District like *Njei,* where money launderers are held accountable for their own "branch" of laundered proceeds and not the entire "tree".

By attempting to sentence Henry for the maximum possible loss for conduct outside of the trial evidence and committed by other individuals without explanation, the government is setting aside decades of acknowledged precedent and elevates Henry's conduct as if he was the mastermind of the entire scheme. This is not an accurate portrayal of the trial evidence that Henry was receiving a minor "cut" of the laundered proceeds and the majority was going to unidentified individuals.  *See Njei.*[1]

### A. ALL OF THE HENRY OMORUYI ACCOUNTS PREDATE THE BANK FRAUD CONSPIRACY AND INCORPORATED WIRE FRAUD CONSPIRACY AND MAY NOT BE CONSIDERED FOR LOSS CALCULATION PURPOSES.

The government offered proof at trial that the Clifford Bernard fake passport was used to open two bank accounts at Santander on November 19, 2020 and a bank account at TD Bank on March 17, 2020.  The government identified the crime as "concealment money laundering" in its Trial Brief.  (ECF#129, p.10).  As a result, no bank fraud was proven to occur prior to March 17, 2020.  Likewise for the victims of wire fraud who testified at trial all of the wire transactions occurred

---

[1] In *Njei*, the trial evidence proved that the money that flowed through the defendant's fake bake accounts went to an individual in South Africa nick-named "Old Soldier" less *Njei's* cut.  Hence, the fact that the is a cut that is mentioned in the instant supports the same relationship.  The fact that the government has not disclosed or discovered the final recipient of the bulk of the funds does not make Henry the recipient.

after March 17, 2020, except one involving LV. By contrast, the government did not charge and did not seek to prove any money laundering associated with bank accounts in Henry's name. All of the sentencing conduct linked to Henry's accounts, (not the Clifford Bernard accounts), occurred **PRIOR** to the counts of conviction and cannot be considered for crimes occurring after each transaction. As a result, none of this conduct should be counted for sentencing relevant conduct purposes.

Although the government has produced evidence for sentencing that shows that that Henry opened bank accounts in his own name **PRIOR** to the bank fraud conspiracy proven at trial, any conduct associated with these accounts is not related to the any of the Counts of conviction and cannot be included in a loss calculation.

Accordingly, the PSR calculated $313,957.15 flowed through the Clifford Bernard accounts. (PSR, p.31). However, a lesser amount of $103,800 was attributable to victims who appeared at trial and testified as to funds they allegedly provided to individuals engaged in a romance scam and was deposited into the Clifford Bernard account.[2]

---

[2] The balance of the funds, approximately $200,000, is is classic relevant conduct. The government proved at trial that an illegal bank account in the name of Clifford Bernard received additional funds beyond the testimony of the witnesses at trial. Although Henry objects under the 5th and 6th Amendments to any amount not proven through witness testimony at trial or sentencing, he recognizes that current case law permits the Court to consider the additional deposits into the Clifford Bernard accounts because the accounts were illegally created for the purpose of concealing financial transactions. The same cannot be said for the older Henry Omoruyi accounts.

It is settled that bank fraud creates proceeds only after execution of the crime. *United States v. Castellini,* 92 F.3d 35, 48 (1st Cir. 2004); *United States v. Mankarious,* 151 F.3d 694, 705 (7th Cir. 1998). Similarly, wire fraud creates proceeds only after a wire transfer. *Id*. Proceeds used for money laundering must be "proceeds" from a different illegal activity than the illegal activity of money laundering itself. *Id.* These cases compel the courts to keep money laundering and the predicate offenses separate. Money laundering requires proceeds of a discrete predicate crime. That predicate crime must have produced proceeds in acts distinct from the conduct that constitutes money laundering. No such proof is available here for the Court to draw any conclusions.

Similarly, there was no overarching wire fraud conspiracy proven at trial. The government proved through witness testimony that certain proceeds that flowed through the Clifford Bernard accounts derived from a romance scam wire fraud. There is no temporal link to any of the transactions in Henry's accounts because they all occurred PRIOR to both of these events.

As a result, the sentencing evidence of other bank accounts in Henry's own name that received deposits from individuals cannot be said to constitute proceeds of the same bank fraud or wire fraud schemes because those crimes had not occurred yet. In fact, there is no evidence that any of these transactions were criminal.

### B. THE PSR'S PROPOSED LOSS AMOUNT IS INCONSITANT WITH OTHER CASES IN THIS DIISTRICT WHERE MONEY LAUNDERING DEFENDANTS ARE HELD ACCOUNTABLE FOR THEIR OWN CONDUCT.

Notably, in *United States v. Njei* the Government did not request and the Court did not order that a defendant convicted of money laundering of fraud related proceeds be sentenced for a loss amount that included the money laundering conduct of other individuals. (See *Njei* PSR, pp. 4-9). Like the instant case, the laundered funds flowed through many accounts opened by many individuals which totaled over several million dollars in the aggregate. Yet, the PSR and the government only recommended sentencing for what Njei personally attempted to launder and the Court imposed a below guidelines sentence.

By contrast, the PSR and government are asking the Court to impose the maximum sentence in this case. This is very different from offering loss calculations that include the same account that contained the laundered funds, but were not testified about during trial. This is a dangerous precedent because it allows the government to prove relatively minor loss amounts at trial and then produce a warehouse full of different transactions from different accounts for different crimes under the guise of relevant conduct without the constitutional protections of live witness testimony and cross-examination and without the temporal connection to the crimes of conviction.

Forcing the government to prove at trial that different accounts were used to launder different funds from different crimes is not a substantial burden.

## **CONCLUSION**

Based upon the foregoing arguments and authorities this Honorable Court is respectfully urged to impose a sentence consistent with the arguments set forth herein.

Respectfully submitted,

_____
Peter Charles Horstmann, Esquire
BBO #556377
450 Lexington Street, Suite 101
Newton, Massachusetts 02466
(617) 519-9011

## **CERTIFICATE OF SERVICE**

I, Peter Charles Horstmann, Esquire, hereby certify that on this 30th day of October, 2023, a copy of the foregoing SENTENCING MEMORANDUM was served electronically, upon AUSAs Chris Markham and Ben Saltzman, 1 Courthouse Way, Boston, MA 02110.

_____
Peter Charles Horstmann, Esquire